United States District Court
District of Massachusetts

```
                                      )
                                      )
UNITED STATES OF AMERICA,             )
                                      )
            v.                        )   Criminal No.
                                      )   10-10009-NMG
                                      )
ORLANDO DEJESUS ORTIZ,                )
                                      )
            Defendant.                )
                                      )
```

MEMORANDUM & ORDER

GORTON, J.

Defendant Orlando DeJesus Ortiz ("Ortiz") is charged with conspiracy to distribute cocaine base, in violation of 21 U.S.C. § 846 (Count I) and distribution of cocaine base and aiding and abetting in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count II).  Before the Court is the defendant's motion to suppress an out-of-court video identification of the defendant made by Chelsea Police Detective Scott Conley ("Detective Conley").

I.   Background

The charges against Ortiz emanate from his alleged participation in the sale of twelve rocks of crack cocaine on May 15, 2009, in Chelsea, Massachusetts.  The following description of the relevant factual background is based on the Federal Bureau

-1-

of Investigation ("FBI") report, a sworn affidavit of Detective
Conley and a transcript of the detention hearing held before
Magistrate Judge Collings on January 12, 2010.

Ortiz's arrest was part of a larger investigation,
"Operation Crossroads," which targeted drug trafficking and gang-
related violence in the area of 5th Street and Chestnut Street in
Chelsea.  That intersection, which is home to several
restaurants, shops and residences, has been a hotbed for drug
sales and violent crime as various gangs have competed for
control of the lucrative crack cocaine trade.

During Operation Crossroads, the FBI's North Shore Gang Task
Force ("the Task Force") utilized a cooperating witness ("CW")
who made controlled purchases of drugs from the targets of the
investigation, usually near the corner of 5th and Chestnut
Streets.  Before each buy, the CW placed a recorded phone call to
the target to arrange a quantity, price and meeting place.
Agents then established surveillance at the arranged meeting
location and the CW was searched and equipped with an audio and
video recording device.  The device was attached to a transmitter
that enabled agents to listen to the transaction in real time.
After the transaction was completed, the agents reviewed the
videotape to determine if they could identify anyone who
participated in the sale.

On May 15, 2009, the CW was instructed to place a phone call

to an individual named Hector Rosa ("Rosa") to arrange a controlled purchase of crack cocaine.[1]  Rosa agreed to sell 12 rocks of crack cocaine for $200.  Later that day, the CW arranged to meet Rosa in the parking lot of a convenience store in Chelsea.  Using the procedure described above, the CW was searched and provided with a transmitter, recording equipment and $200 in government funds.  The CW proceeded to the convenience store parking lot where surveillance had been established.  Rosa informed the CW that he was sending his cousin "Monkey" with the drugs.

The agents on surveillance observed the CW park next to a dark-colored sports utility vehicle.  A dark-skinned man wearing a baseball cap and white shirt emerged from the car and approached the driver's side of the CW's car.  When the man reached the car, the CW asked, "Monkey, right?"  The man then handed the CW a bag of crack cocaine in exchange for $200 and returned to his car.  As he began to drive away, the CW motioned for him to stop so he could count the rocks.  When the man stopped, the video recorder in the CW's vehicle captured an image of most of the man's face.

Detective Conley was one of the task force agents on surveillance that day.  He did not see the transaction from his vantage point but he heard the CW call the seller "Monkey" over

_____

[1] Rosa is a named co-defendant in this case.

the transmitter.   Detective Conley, who has been a Chelsea police officer for 15 years and is familiar with many Chelsea residents, knows the defendant by his name and nickname "Monkey".   Over the years, Conley's relationship with the defendant has been "largely cordial and informal," although he arrested him once in 1998 for disturbing the peace.   Relying on the seller's nickname "Monkey" (a nickname Conley claims to have heard exclusively to describe the defendant), Conley printed a booking photograph of the defendant and showed it to the CW who, with no other identifying information, positively identified the defendant as the man who had sold him the drugs.   Then, on May 18, 2009, three days after the transaction, Detective Conley watched the video recording of the transaction and immediately recognized the defendant.

II.   **Legal Analysis**

    A.   **Legal Standard**

The First Circuit employs a two-part test to evaluate the admissibility of out-of-court identifications.   United States v. Henderson, 320 F.3d 92, 100 (1st Cir. 2003).   First, the court determines if the identification procedure was "impermissibly suggestive."   Id.   Next, it asks if, notwithstanding the suggestive procedure, whether the identification was reliable under the totality of the circumstances.   Id.; Manson v. Braithwaite, 432 U.S. 98, 114 (1977).   Reliability is the "linchpin in determining the admissibility of identification

testimony." <u>Id.</u>  The primary evil to be avoided is a "very
substantial likelihood of irreparable misidentification."  <u>Neil</u>
v. <u>Biggers</u>, 409 U.S. 188, 198 (1972).

B.   Application

The defendant contends that Detective Conley's video
identification of him is impermissibly suggestive and unreliable
under the totality of the circumstances.  He insists that because
the video does not show a complete view of the seller's face (the
government concedes that the face is obscured slightly by a
baseball cap), it would be impossible for the detective to
identify the defendant by watching the video alone.  He reasons,
therefore, that Detective Conley must have made the
identification by comparing the defendant's booking photos with
the video image.  Given that the video image does not reveal the
seller's full facial features, the defendant concludes that the
comparative identification procedure was impermissibility
suggestive.

The defendant's argument is underwhelming.  He cites no
cases that directly support his position and, more importantly,
his argument hinges on faulty assumptions regarding the
circumstances under which the identification was made.  Detective
Conley's affidavit makes clear that his identification of the
defendant in the video was not made by way of a comparison to the
defendant's booking photos but rather was based upon his

substantial acquaintance with the defendant.

Detective Conley avers that he has known the defendant for 15 years and encountered him regularly over the course of his career as a Chelsea police officer.  The report that Conley prepared in conjunction with the defendant's 1998 arrest demonstrates that, even at that time, Conley was well enough acquainted with the defendant to conclude that his disorderly conduct on the day in question was an "exception to his usual personality."  Conley also noted in that report that the defendant's nickname was "Monkey."

Additionally, when the defendant learned of his arrest warrant in this case, he spoke to Detective Conley (calling him by his first name, Scott) about turning himself in.  He was hesitant, however, because he did not want to be arrested in front of his girlfriend.  Conley arranged to meet the defendant at a designated location where he was frisked, handcuffed and transported to District Court without incident.  The fact that the defendant was comfortable enough to ask Conley to arrange a special arrest procedure (and that Conley accepted the defendant's request) confirms that the two men were well-acquainted.

The Court also notes that, although the seller's facial features were partially obscured in the subject video recording, the image of his face was clear enough to permit an individual,

such as Conley, who had known the defendant for 15 years, to make a reliable identification.  Accordingly, even if the video identification procedure were deemed impermissibly suggestive, it is decisively reliable under the totality of circumstances.

### ORDER

In accordance with the foregoing, Defendant's motion to suppress (Docket No. 29) is **DENIED** without an evidentiary hearing.

**So ordered.**

_/s/ Nathaniel M. Gorton_
Nathaniel M. Gorton
United States District Judge

Dated July 22, 2010